WILLIAM E. ROBERTS, BEULAH C. ROBERTS, AND DIANNE ROBERTS
SHORT, A MINOR, APPEARING HEREIN BY HER NEXT FRIEND WILLIAM E.
ROBERTS v. WALTER VANCE SHORT, MYRTLE SHORT, AND JOHNNY
SHORT

No. 699DC460

(Filed 22 October 1969)

1. **Parent and Child § 6; Infants § 9— right of father to custody of
minor child — abandonment by mother**

Where the mother abandons any claim she may have to the custody of
her daughter, the father alone has the natural and legal right to the cus-
tody of the child unless for substantial and sufficient reasons the interest
and welfare of the child require that he be denied that right.

2. **Parent and Child § 6; Infants § 9— custody of child — polar
star rule — discretion of court**

The welfare of the infants themselves is the polar star by which the
courts are to be guided to a right conclusion, and therefore the courts
may within certain limits exercise a sound discretion for the benefit of
the child, and in some cases will order it into the custody of a third
person for good and sufficient reasons.

3. **Parent and Child § 6; Infants § 9— custody of child — contest
between father and maternal grandparents — findings**

Where the question of the custody of a minor child narrowed to a con-
test between the father and the maternal grandparents, the mother hav-
ing abandoned her claim to the child, the trial court properly awarded
custody to the father upon findings, supported by the evidence, that the
father was a fit and suitable person to have custody of the child and that
the mother had engaged in numerous acts of misconduct and was there-
fore not a suitable and proper person, and there existed the possibility
that the mother would be the one caring for the child should custody be
awarded to the grandparents.

4. **Parent and Child § 6; Infants § 9— question of child custody —
review of decision**

The question of child custody is one addressed to the trial court and
its decision will be upheld if supported by competent evidence.

APPEAL by plaintiffs, William E. Roberts, and Beulah C. Roberts,
from *Banzet, District Judge,* 9 May 1969 Civil Session, District
Court of VANCE County.

The plaintiffs brought this action on 14 February 1969 seeking
custody of Teresa Jean Short who was born 23 February 1967 of
the marriage of the minor plaintiff, Dianne Roberts Short, and the
defendant, Walter Vance Short. The parents separated on 13 Jan-
uary 1969.

The plaintiffs, William E. Roberts and Beulah C. Roberts, are

the adoptive parents of the mother, Dianne Roberts Short. The defendants, Myrtle Short and Johnny Short, are the parents of the father, Walter Vance Short. The record does not disclose that the grandchild has ever been in the custody of the paternal grandparents nor does it appear that they have ever asserted any right to her custody.

During the course of the hearing on the issue of custody Dianne Roberts Short stipulated through her next friend that she was making no claim on her own behalf for the custody of her daughter. Thus, the question of who was to have the custody of the minor child narrowed to a contest between the defendant father and the plaintiff grandparents.

After hearing testimony for two days the court made appropriate findings and concluded that the child's father was a fit and suitable person to have custody of his minor daughter and that her best interest would be served by placing her in his custody. Judgment was entered granting the primary custody of the child to the father and reserving in the mother certain privileges of visitation. The plaintiff grandparents appeal, assigning as error the court's findings and conclusions respecting the fitness of the defendant father and the best interest of the child.

Bobby W. Rogers for plaintiff appellants.

James C. Cooper, Jr. for defendant appellees.

GRAHAM, J.

[1, 2] By stipulation during the hearing, the mother abandoned any claim she may have had to the custody of her daughter. It then followed that the father alone had the natural and legal right to the custody of the child unless for substantial and sufficient reasons it was determined that the interest and welfare of the child required that he be denied that right. *Wilson v. Wilson*, 269 N.C. 676, 153 S.E. 2d 349; *Holmes v. Sanders*, 246 N.C. 200, 97 S.E. 2d 683; *James v. Pretlow*, 242 N.C. 102, 86 S.E. 2d 759; *Tyner v. Tyner*, 206 N.C. 776, 175 S.E. 144. ". . . [T]he welfare of the infants themselves is the polar star by which the courts are to be guided to a right conclusion, and, therefore, they may, within certain limits, exercise a sound discretion for the benefit of the child, and in some cases will order it into the custody of a third person for good and sufficient reasons." *Tyner v. Tyner, supra*, at 779, 175 S.E. at 146.

[3] We fail to see where any good and sufficient reasons exist in

this case for denying the father his natural and legal right to the custody of his daughter. It is true that there is evidence in the record before us that would tend to indicate that the father is not an exemplary parent. Such evidence is not unusual in vigorously contested custody cases. There is also evidence, however, to show that the father is a man of good character and temperament; that he is experienced in caring for his child; and that he is a hard and regular worker who supports his family. His love for his daughter and his concern for her welfare are beyond question. He has made arrangements to live with the child in his parents' home. The home is modest, and as contended by the plaintiffs, it is crowded. The evidence, however, does not show it to be inadequate. The defendant's mother and married sister will assist in caring for the child. They are both experienced in caring for children and his mother was in fact licensed by the Virginia Welfare Department to do so.

The plaintiff grandparents strongly contend that even if the father is a fit and suitable person for custody, the child's welfare would best be served by placing her custody with them. The evidence does not compel any such finding, nor in our opinion would it support such a finding. The total testimony of Mr. Roberts as it appears in the record is as follows:

"He came to my house when Beulah was in the hospital and he was drinking. I saw the baby with blood running out of a scar. I have lost a leg. I do not have high blood pressure."

The extent of Mrs. Roberts' testimony was that she had seen her son-in-law spank and hurt the child; she and her husband once signed a note for him; he drinks and she has seen him under the influence two or three times. The only statement having any bearing on her ability to care for the minor child is: "My health is fine." The only other witness for the plaintiffs was the child's mother. Her testimony consisted entirely of accusations against her husband plus a few admissions of her own misconduct. The record appears to us to be completely devoid of any information concerning the Roberts home, or the plans they have for looking after the child should she become their responsibility. The testimony of the defendant father suggests that at one time Mrs. Roberts operated a beauty shop in her home. There was no evidence offered as to the present employment of either Mr. or Mrs. Roberts, or whether either or both of them were at home during the day.

It may be inferred from the record that the child's mother intends to live with the Roberts and would be the one caring for the

child should her custody be awarded to them. In this connection it should be noted that the court found numerous facts relating to misconduct on the part of the mother and concluded that she was not a fit, suitable and proper person to have custody of her daughter. The evidence fully supports these findings. Certainly it would not be in the best interest of the child to be placed permanently in the same home with the unsuitable mother and perhaps to a large extent come under her continued control and influence.

[4]    The question of custody is one addressed to the trial court and its decision will be upheld if supported by competent evidence. *Hinkle v. Hinkle,* 266 N.C. 189, 146 S.E. 2d 73; *In re McCraw Children,* 3 N.C. App. 390, 165 S.E. 2d 1. Judge Banzet heard testimony in this case for two days. He observed the parties and witnesses and had an opportunity to evaluate their testimony first hand. In our opinion the evidence fully supports his findings and his judgment will therefore not be disturbed.

Affirmed.

CAMPBELL and PARKER, JJ., concur.